Appellants Jack Miller and his family were subjected to an unlawful midnight raid based on warrants that were unsupported by probable cause and were obtained through material omissions and misstatements. And this was done, it's our contention, based on retaliatory conduct of the chief of police, Joseph Salvaggio, based on Miller's status as a First Amendment activist, who is known to Salvaggio prior to this incident as someone that films police officers, files complaints against police departments. And the district court erred in granting summary judgment in this case because there are genuine issues of material fact that preclude qualified immunity at this stage. What I think significantly in this case, unfortunately I didn't get to brief it, but we did submit a 28-J letter was after Judge Pulliam issued his opinion. The Supreme Court issued an opinion in Gonzales v. Trevino on June 20, 2024, and what that did was overturned a Fifth Circuit case in that matter, specific on how to apply the Nieves v. Bartlett exception for retaliatory cases, where what instances can you not look at probable cause. And so even though we briefed Nieves Bartlett, Judge Pulliam never actually addressed whether or not the exception applied. Originally at the time, Nieves Bartlett said you needed at least the Fifth Circuit's application was that you needed a comparator evidence showing that other people engaged in the same conduct but did not, were not subject to arrest. What Gonzales v. Trevino did was it essentially held that the goal is not to look for comparator evidence, but does the record have objective evidence that could support the idea that a police officer used their discretion to arrest because of First Amendment conduct? But it still doesn't knock out the basic proposition of Nieves, that if they have PC, you're not going to get a First Amendment retaliatory. As I understand Trevino, that's a very different situation. It would be as if you were saying no one in Texas gets indicted under 4601, right? So that's the world of comparables. Here, 4601, and correct me if I'm wrong, it's a valid Texas criminal offense. Your Honor, the key thing with the offense that is 4603, weapons prohibited, was the key thing here is we contend that probable cause does not exist, but even if the court found probable cause does exist, there is objective evidence in this record that shows that these officers have never arrested anybody who have engaged in similar conduct, specifically the Leon Valley Municipal Building. Well, if you don't mind, stick with what the brief argued before you, on Trevino. Let's just, is your argument that there's no PC a Malley argument, bare bones, or is it a Franks v. Delaware, there was a false statement in the affidavit given to Bexar v. Judge Travera? My principle argument, Your Honor, is Winfrey v. Rogers, that there were misstatements and omissions. That's a Franks claim, but in your principle brief, do you address how, if there were, that would have tainted either the judge who gave the warrant or the grand jury that indicted your claim? Your Honor, we, I believe we do. Our whole principle in this is that they represented specifically, they left out facts that I think are critical to probable cause, and then they lied too, right? They said they knew for a fact that he was in a courtroom with a firearm. That's not true. They didn't actually know. Second, they allowed him to leave the building and then come back in to file a complaint. They never actually stopped him. Jack Miller thought- Okay, slow down on all those points. What case do you have that it's stale to arrest someone at midnight and not arrest them immediately upon the offense? Your Honor, on our brief- What's your best staleness case, that that affidavit contains stale evidence? So the cases I have, page 37 of my brief, is that the staleness is a fact-intensive inquiry, and the Winfrey case talks about that also. We cite to United States- Right, but they arrested him on the very date of his criminal conduct. Correct, Your Honor. Your Honor, the issue, though, is- so the issue is we cite, at page 38, the state law that talks about the critical element for possession is you actually have to have possession. Our contention is the moment they let Jack Miller get in his vehicle, drive away, didn't follow him, and then only once they reported it to Salvaggio that they go back several hours, they had no information whatsoever that they would ever be able to find him with any firearm, let alone a firearm inside of his house. Isn't the critical question whether a reasonable officer, based on the video, could have concluded that Miller was carrying a real handgun in a prohibited place? Your Honor, the- I don't think so, and the reason is none of the- there's a couple of facts to this. None of the officers thought he was actually guilty of committing a crime. None of them wanted to use discretion to arrest him. But again, the question is whether a reasonable officer could have thought, based on that video, and you're saying no? We concede that the officers would have reasonable suspicion, and this is what Miller thought, that if they did detain him, they would have immediately identified that the weapon was not real, because the key thing is you actually- the firearm in 4603, firearm is very specifically defined, right? You can't just walk in, you know, it doesn't say- it does not prohibit the carry of a training device that appears to look like a firearm. Your rule of law is in a restricted carry building, CSOs, police officers, have to actually seize the gun that the person calls a gun, doesn't say it's a fake gun, doesn't say it's a rubber gun, he calls it a gun. They have to actually seize it and make sure it functions as a gun? Your Honor, he never called it a gun. The officers called it a gun. They said you need to step outside with that. And I want to be clear, he never went through security, he never got wanted, he stayed in the front. But is the rule you're saying that you can only arrest in Texas under 4603 if the officer actually takes the gun and confirms that it can function as a gun? That, Your Honor, under Texas law, and I say to the Hawkins v. State case, which is a Texas Court of Criminal Appeals case, which has been the law since 1976, is an essential aspect to a violation of prohibited carry, is you have to establish actual possession. And firearm is very clearly defined. No one's disputing possession, it's on his body. But your argument is, even though he never tells them it's a rubber gun, he never tells them it's a fake gun, we've got, it's a Scott v. Harris case, we've got the video. So they had to, in order to be able to get an arrest warrant, they had to actually take that item and confirm it's a functioning gun? Your Honor, to meet the definition under 4603 of firearm, I do believe so. I think they had enough to detain him, to seize the firearm or the device from him, and then at that point, once they would have discovered it was a rubber device, they would have let him go. But even assuming that this court says, okay, that there is probable cause or arguable probable cause, we still have a Silva v. Gonzalez issue, or sorry, before I get to that, we still have a staleness issue, because even if they thought at the time he was breaking the law, they let him leave, and then once he left, they were never, ever, ever going to establish that he actually possessed a firearm, because he was gone for hours. They could have found him with 99% of the firearms in the world, but they would have never been able to establish what he had. Our other issue— Well, go slowly, don't switch to another issue, because Judge Clement— The fact that they didn't act on the impression that the gun was real, they didn't pat him down or do a terror stop. They did nothing. They just let him leave. So does that infer that they didn't think the gun was real or that he didn't intend to bring the gun into, pass security into the courtroom, I mean, the court building? I think so, Your Honor. If we are taking these facts in favor of Mr. Miller as the non-movement, that is the presumption. As a matter of fact, when we deposed Officer Rivera, she testified that normally the normal procedure—it's not unusual for people to come in with firearms, and what they normally do is they tell them they need to leave it in their vehicle. They even have lock boxes. That was never offered to Miller. Detective Wells also testified that, you know, once Miller left the building, he didn't see any reason to detain or arrest him. So nobody saw any reason to think that he was doing anything to break the law. Why isn't that just discretion? They don't want to have a big scene, especially someone who's got a gun, immediately. And so they're going to be deliberate. They're going to present it to a magistrate, and then they're going to arrest same day. And here's the legal question, because you keep mentioning staleness. What case do you have that evidence obtained during his visit became stale the minute he left? Your Honor, the cases I cite to is United States v. Galagos, 239 F. APPX 890, Fifth Circuit case from 2007, in my brief on page 37, and the principle is that staleness is a fact-intensive question, and the legal principle is that stale information can never support probable cause. So our position is that if possession is a critical element, possession of a firearm, a clearly defined firearm is a critical element, the moment they let him leave and drive away, they could never even establish that the firearm, or what he possessed, they'd never be able to find it. They'd never even established in the affidavit that it was at his home. How would they know that? They're just assuming. And the discretion piece, Your Honor, is what's critical. Even, again, if we put the probable cause piece aside, the problem in what the Supreme Court is looking for in the Gonzales v. Trevino opinion is when officers are using discretion to target people engaged in First Amendment activity. That's what our position is here. You mentioned discretion, Your Honor. The fact is, the record contains facts that these officers had never arrested anybody for bringing in any device that looks like a firearm on their hip. They normally tell them to use the lockbox, or they tell them to leave it in their vehicle. However, once information got to Salvaggio that Jack Miller, who he knows, went to Leon Jack Miller, and how do we know this? The very opening sentence in the affidavit describes Jack Miller as a First Amendment auditor. So, they immediately classify him with sentence one of the affidavit. And so, the Gonzales v. Trevino case, we think that there is objective evidence to where even if this court said, you know what, maybe there is arguable probable cause, or we don't need to do staleness. The issue is the First Amendment arrest issue. Does probable cause even matter? And we think not. In Gallegos, how much time elapsed between the observed criminal behavior and the search? I don't have that in front of me, Your Honor. That's your best authority for staleness. It will. And the Winfrey case where it talks about, there's no bright line rule, right? I think the question, it's got to be a fact analysis, that the issue— You keep coming to Winfrey. Winfrey is an independent intermediary case. That requires you to have said there was a taint. When you stand back up, if you could tell me in your principal brief where you make any assertion of taint, I would be grateful for that. Your Honor, other than simply pointing out that they left out significant facts that go to probable cause to include they didn't know if it was a firearm, the fact that they never conducted any Terry stop, the fact that they let him leave the building, come back into the building, and then leave and drive away. And then the fact that they did a search warrant affidavit saying that they were going to find evidence of a crime in his home, but they have no information in the affidavit whatsoever to establish why they thought anything would be at his home. So all they put in there was Jack Miller is a First Amendment auditor. He came in with a firearm, and this affidavit was written by Defendant Gonzalez, Salvadio, Anderson, and the person who signed the affidavit even testified that he didn't write it. Your argument—we'll see opposing counsel get up, but how would it be any different than an ATF agent sees a known felon in a schoolyard with kids with a gun, a visible gun, and they don't want to confront that known felon in front of the children. But they see the gun. They've got a video of it. So they go back. They have an affidavit. Get a magistrate, Article III world, to say, yeah, that's probable cause. Go arrest him. Why isn't that the situation? This guy's in a court building, a government building. They don't want to escalate it. Your Honor, I think the defendants could take that fact, that position, all day, and I think that Miller should be entitled to take the position that he was targeted for his First Amendment activity. The officers let him leave. They could have stopped him in the parking lot. Okay, but targeting—so this is a pure Trevino argument. Yes, Your Honor. This is not Malley and Franks. You're shifting to your 28J. Yes, Your Honor, because I—my problem is that Miller was targeted. That's been our position the whole time, that he was targeted, and Salvaggio's deposition is wrought with the fact that he thought Miller has gotten away with too much in his life. He also brought up accusations that Miller, who used to be a law enforcement officer and they've known each other for years, would spread rumors about the fact that Miller had slept with Salvaggio's wife. Salvaggio made very clear his discontent for Jack Miller, and he saw no problem. And then Salvaggio showed up to Miller's house at that midnight raid, and after Miller was arrested, got in his face, smirked—he admits to this—smirked and said, thank you for visiting Leon Valley today, Jack. And so we think that the animosity is not about the actual offense. It's about targeting for First Amendment issues. But you never raised a challenge to the midnight search and seizure, did you? We did, Your Honor, yes. What happened? Specific to the Fourth Amendment side of the case, the charges were dismissed, but we did raise a challenge. The court ultimately found that probable cause existed. The court ignored our Neves exception analysis, and of course the court had not had an opportunity to review our inquiry in light of Gonzales v. Trevino because of the date of the opinion. Thank you. All right. Thank you, Mr. Gray. Will you save time for rebuttal? Mr. Fierro? Good morning. May it please the court, opposing counsel. My name is Charles Frigerio, and I represent Chief Salvaggio and the named individual, a city of Leon Valley, police officers in this lawsuit. City of Leon Valley is in the northwest part near San Antonio, Texas. And the reason we are here today is because Jack Miller went into the court area in under 4603. It defines the premises of a governmental court or offices utilized by the court. And the court was in session that day. There were signs outside the doorway. There were signs on the door wells as well. And he walked past at least three signs. He walked past two doors and approached an officer, which was Officer Rivera. And Officer Rivera recognized that he was carrying a Glock, which she recognized to be a Glock. And in the record, we have four seasoned officers who have testified on the record that it was, in their opinion, it looked exactly like a Glock. The video evidence establishes, I would argue, that it looked exactly like a Glock, a weapon. And in fact, ultimately, what's important is, you know, Mr. Miller, I would submit to the court that he outguessed himself. If indeed it was a fake gun, which I do not concede, it looked like a real gun to me. In the record that we have at 886, when he went a couple months prior to this into the San Antonio Police Department carrying this weapon, and in that video, it shows him what I would say was spewing vitriol at the officers trying to engage. In his deposition, I showed him that video, and he said, no, that's my real Glock. And then about a half an hour into the deposition, as we went over different areas, he stopped me and he came back from a break and he said, I want to change my testimony. No, that gun that I was using there at the San Antonio Police Department, that was my fake gun. That's the one that I painted black, and that's the one that I used when I went to Leon Valley. So he didn't even know when he looked at the tape whether or not it was the real gun or a fake gun. In his testimony, he said whatever gun he had that he painted black, he painted it black so that everybody would know that it was a Glock and no one would bother him. So this is what he did. This is what the evidence shows, that he went to the municipal court and violated 46.03. And in violating that statute, it was the same day, Lieutenant Anderson, it wasn't Chief Salvaggio that made the determination. The evidence in front and on the record is Lieutenant Anderson made the determination not to arrest him there because court was in session, there were people in the area, the court was right there, and there's places where people were paying fines and et cetera. He did not want to cause a situation where, you also have to understand that Mr. Howe is here filming Miller going in there, so it's all trying to be some kind of an orchestrated movie. And they didn't want to play into that hand to arrest him there with what everybody, these experienced officers at least, thought was a Glock weapon. They didn't want to do it there, they were going to take it before a magistrate. And that's what they did that night. They worked, they took it before a magistrate, they got a search warrant and arrest warrant, they waited for him there. The reason it happened at midnight is because they waited for him to come home. He didn't come home until right before midnight, and that's when they executed the search warrant and the arrest warrant. Your principal response to the brief is, there's PC and that defeats the Fourth Amendment and the First Amendment retaliation. Yes. The normal response to that is, no there isn't. There wasn't PC, it's Malley, or attained through false statements. Right? Right. And as I understand his argument, he's suggesting both those, Malley and Franks, exist here because under Texas law, it has to be shown, more probably than not, that the gun was real, the gun could function. To prove a conviction, but not necessarily the arrest. Okay, do you have it? We actually have the video, I would argue that just by the video itself, it showed he was in the government building with the weapon. Did he call it a gun in the video, do you remember? He never disassociated from a gun because Officer Wells went up to him and said, you need to get out of here with your gun. At this point, he didn't say, oh it's not a real gun, I can be here. Because his idea was, he can be anywhere with his gun. But again, as I said a few minutes ago, isn't the test whether a reasonable officer could have concluded that he was carrying a real handgun in this prohibited space? That exactly is the test which Judge Pulliam put in his order granting summary judgment. Whether or not a reasonable officer could look at that and look at Mr. Miller, and four reasonable officers did look at Mr. Miller and determine it was a gun. And if that's the end of the story, it sounds like he's now, the shift is to the 28J, what about Trevino? Even if a reasonable officer could, the arresting officers can't be targeting for a crime that they would never otherwise prosecute. Yes. I would argue that the Niava's exception does not apply to this case, and I would also mention that the Trevino case was a motion to dismiss. There was no evidentiary, it was just based on where the court had to take the allegations in the complaint, and they sent it back down to the court. And here we have a weighing of facts. We have what actually occurred. And in our 28... According to him, he says, but they showed up hours and hours later, and why did King and Gonzales fill out the affidavit if they weren't even the ones that were first-hand observers? Gonzales was like the CID officer, and he was teaching King, who had granted and had never done one, but he was the detective in CID, and they were using that as a training experience. Right, but neither of them were present or observed, any of this. Correct. That's just the collective knowledge principle, right? Yes, Your Honor. And the judge, Clement, your opinion, which came out after Gonzales versus Trevino, which was the subject of our 28J letter, the Degenhardt versus Brentleth, that also showed that qualified immunity can apply to a First Amendment case if you have probable cause. And in this case, we have probable cause, and even if we go down the Mount Healthy, which Judge Alito's explanation to give guidance as to what we look at for, if we go down that balancing test, if we were to go down there, my initial argument would be to say we shouldn't because we have probable cause, and there's no evidence of the Nevis exception. But even if we do go down that road, where Judge Alito talks about what we should look at for reasonable officers, what type of evidence to look at, the evidence in this case that would suffice for these officers is that we had a magistrate judge issuing the search warrant, and Judge Alito said if reasonable officers, if we take to an independent intermediary, and in this case, we not only had Judge Tavera, who was the independent intermediary who signed the search warrant and arrest warrant, we also had a Bexar County grand jury, so we had two. The grand jury later indicted him for violating Section 4603. Has he argued taint at all or not?  Have they argued taint? Yes, you've got intermediaries, but they were tainted? I don't believe he has in this case, and I don't know whether it would because it's on film. So would we have, I think we have, I don't, obviously the officers felt that there was a weapon, and fortunately we had the film by his own cohort, Mr. Brian Howd, showing the weapon, which is even, we have a still in our briefing, which shows that black gun looks just like a Glock, which I think is really the best evidence in the case that he violated 4603. When he told his friend that the gun was rubber, where was Agent Rivera standing? You can't tell from the video. I don't know that he ever, when he mentioned, I don't know that he ever said anything about the gun being made out of rubber. But he told his friend. Oh, that was after he left, supposedly put the gun back. He came back and he's talking with Mr. Howd, and no one heard that. And that's what Judge Pulliam mentioned, and there's no evidence that anyone heard that other than he's talking to his friend, Mr. Howd. So no, that was, as far as all four officers that actually saw the weapon, they continued to believe that was a weapon, and to this day believe it's a weapon. We had nothing to show that it wasn't a weapon, quite frankly. So our argument is that there is probable cause. Judge Pulliam made the correct decision, and the correct, as your court pointed out, that the real issue is whether or not the defendant officers knowingly or intentionally or with reckless disregard for the truth falsely stated that Miller was wearing a real gun. There's no evidence that they acted unreasonably or that they knew that it was not a real gun. So that probable cause defeats as far as it should entitle the officers to qualified immunity. And on the First Amendment claim, I think that has been briefed in the fact that we've have an, at the very, even if we go down that road of Judge Alito, Justice Alito, that we do have an independent intermediary twice, which proves that the officers acted objectively reasonable. I thank you, Mr. Court. Thank you, Mr. Peggioro. Mr. Grable for rebuttal. Your Honors, and may it please the Court, I wanted to address something pretty quickly about when Judge Pulliam indicated that no one heard that Miller declared that the weapon was rubber in front of everybody. You know, again, this is another fact issue, I think, is for the jury to decide, not a judge weighing the evidence. The judge is basically taking the officers' representations that they didn't hear it, and they're weighing it with the fact that the statement was made as reflected on the video. So the jury should ultimately be the ones to decide whether or not that matters. And I think that, of course, that would go to the probable cause, but again, I'm here before you today saying that the issue, because I understand how novel and convoluted the probable cause issue is, the four officers who observed Mr. Miller, no one thought it was necessary to arrest him. It was only once Salvaggio learned of it. But even then, that's not the critical issue here. The critical issue is whether Miller was treated differently because of his status as a First Amendment auditor, because he was there to film, because he was there to file a complaint against the police officer. No one was disputing that Mr. Miller was engaged in First Amendment conduct. Even Lieutenant Anderson, who didn't know Miller from Adam, but understood that he was there as an activist because the record reflects, he said, you know, you can practice the First Amendment until your ears bleed, right? Even though Miller never said, I'm here for the First Amendment. He just wanted to file a complaint. So I would ask this Court that, you know, in light of the Gonzales v. Trevino case, the question, again, is whether or not there's objective evidence in the record to suggest that probable cause is not a valuating factor. I would ask further, if the Court doesn't want to make those findings about whether objective evidence exists, I would also ask the Court, you know, to maybe even consider remanding to Judge Pulliam to decide whether or not the Gonzales v. Trevino, applying Gonzales v. Trevino, whether or not the record would have objective evidence in order to say that probable cause should not be part of the equation. That's what I see. If I saw a path to victory here, it's let's put probable cause aside and let's take the issue to the jury as to whether or not Chief Salvadio acted with, targeted Jack Miller based on his engagement in First Amendment activity. All right. We only received this 28-J letter this morning, dated October 4th. I mean, it's legitimately a 28-J because it is recent authority. So let's have each side file with us a letter brief not exceed three pages by next Monday addressing Gonzales v. Trevino as it applies to this record. Yes, Your Honors. If there's any questions, I'm done. All right. Thank you. Your case is under submission. The Court will take a brief recess before we hear from you.